**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THOMAS FABREGA,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No.**    2:23-CV-650 |
| | ) | |
| **GLEN WAGNER AND WAGNER** | ) | **JURY TRIAL DEMANDED** |
| **DEVELOPMENT COMPANY, INC.,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Thomas Fabrega ("Mr. Fabrega") brings this Complaint against Glen Wagner ("Mr. Wagner") and Wagner Development Company, Inc. ("WDC" and together with Mr. Wagner, the "Defendants"), and alleges as follows:

## PARTIES

1.      Mr. Fabrega began employment with WDC in February 2016 and ended his employment on September 30, 2022. As provided in more detail below, Mr. Fabrega acquired equity interests in WDC, GT Property Holdings, LLC, Hilltop Business Park LLC, and TG Investments LLC (collectively, the "Entities") at various points from December 17, 2019 onward, which he continues to possess. Mr. Fabrega currently resides in the state of Washington.

2.      Mr. Wagner is the President of WDC and has a majority ownership in WDC, GT Property Holdings, LLC, and Hilltop Business Park LLC. He has a 50% ownership in TG Investments LLC. Mr. Wagner resides in Allegheny County, Pennsylvania.

3.      WDC is incorporated in Pennsylvania and has its principal place of business in Allegheny County, Pennsylvania.

## JURISDICTION AND VENUE

4.      Mr. Fabrega is a resident of Washington, and the Defendants are residents of Pennsylvania. The amount in controversy exceeds $75,000. Therefore, the Court has jurisdiction pursuant to 28 U.S.C. § 1332.

5.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because the Defendants are both residents of Allegheny County, Pennsylvania. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the Western District of Pennsylvania.

## FACTUAL BACKGROUND

### Mr. Fabrega Begins Employment at WDC

6.      In August 2015, Mr. Fabrega moved to the Pittsburgh area from the state of Washington so that his spouse could obtain further vocational education.

7.      In February 2016, WDC hired Mr. Fabrega as a Project Coordinator for its general construction business, which was struggling at the time. *See* Ex. 1, February 10, 2016 Offer of Employment Letter.

8.      As reflected in his offer letter sent from WDC, Mr. Fabrega's responsibilities as a Project Coordinator included the following:

(1) preparation and distribution of subcontracts and purchase orders

. . . ; (2) creation and maintenance of individual project files; (3) processing and logging payment applications and invoices; (4) organizing and logging subcontract and purchase order documents; (5) tracking insurance certificates; (6) maintaining project directories; (7) coordinating and logging project close-out and owner close-out documents; (8) processing payment applications and invoices in accounting systems; and (9) preparing and tracking lien waiver forms for distribution with subcontracts and purchase orders. *Id.*

9.    Mr. Fabrega had previously practiced as an attorney while living in Washington, and he was admitted to the Washington state bar. Mr. Fabrega has never applied for or been admitted to the Pennsylvania bar.

10.    To clarify his employment relationship with WDC, Mr. Fabrega's Offer of Employment Letter included the following disclaimer:

> Wagner represents and warrants that the fulfillment of Thomas Fabrega's employment responsibilities does not constitute the provision of legal advice in any capacity, and that Wagner will not seek legal counsel from Thomas Fabrega. Wagner further represents and warrants that Thomas Fabrega shall not be responsible for advising Wagner as to its legal rights and obligations in any capacity, including but not limited to, any contractual matters, tax matters, human resources matters, and/or corporate governance. Thomas Fabrega's employment with Wagner shall not be construed as creating an attorney-client relationship under any circumstances. *Id.*

11.    At the time that WDC hired Mr. Fabrega, its President, Mr. Wagner, owned all of WDC's outstanding shares.

12.    In March 2016, Mr. Fabrega and WDC entered into an indemnity agreement, effective as of February 11, 2016, providing him security from liability exposure in exchange for taking on executive management responsibilities for the day-to-day operations of WDC. *See* Ex. 2, February 11, 2016 Indemnity Agreement.

13.    Mr. Fabrega provided significant value to WDC, leading to his promotion to Chief

Operations Officer in June 2016.  *See* Ex. 3, June 8, 2016 Offer of Advancement Letter.

14.    Mr. Fabrega's Offer of Advancement Letter stated that he would perform the following tasks in his role as Chief Operations Officer:

> 1) Direct company operations, 2) Develop & implement budgets, 3) Establish performance goals and barometers, 4) Develop, implement, and revise company policies, 5) Execute business strategies, 6) Direct & participate in acquisition & growth activities to support overall business objectives and plans, 7) Implement performance management process & practices, 8) Oversee human resources department, 9) Oversee accounting department, 10) Manage business relationships with key suppliers/subcontractors, 11) Manage corporate integrity & high standards of the company, 12) Execute quality control, 13) Manage internal systems, programs and support venders [sic], 13) Develop new processes and programs, 14) Inform the president /owner, and ultimately the board of directors, of all program accomplishments and areas of opportunity, 15) Assist the president/owner in planning, organizing, and implementing public and private fund-raising initiatives. *Id.*

15.    Like with his February 10, 2016 Offer of Employment Letter, the Offer of Advancement Letter contained a provision making clear that Mr. Fabrega would not offer legal services to WDC:

> Wagner represents and warrants that the fulfillment of Thomas Fabrega's employment responsibilities does not constitute the provision of legal advice in any capacity, and that Wagner will not seek legal counsel from Thomas Fabrega. Wagner further represents and warrants that Thomas Fabrega shall not be responsible for advising Wagner as to its legal rights and obligations in any capacity, including but not limited to, any contractual matters, tax matters, human resources matters, and/or corporate governance. Thomas Fabrega's employment with Wagner shall not be construed as creating an attorney-client relationship under any circumstances. *Id.*

16.    During his entire time living in Pennsylvania, Mr. Fabrega did not provide legal services to anyone, including the Entities, their employees, Mr. Wagner, or Mr. Wagner's family members or friends. Mr. Fabrega worked in real estate and construction as a Project

Coordinator or later as a business executive.

**Mr. Fabrega Becomes a Shareholder in WDC and Other Businesses with Mr. Wagner**

17.     To reflect Mr. Fabrega's critical contributions to the success of WDC, Mr. Wagner promised to reward Mr. Fabrega with equity in WDC as memorialized in an email from approximately February 22, 2017. *See* Ex. 4, February 22, 2017 Ownership Email. Specifically, Mr. Wagner stated, "for every successful year [WDC] has under your leadership for four years starting January 2017 10% of the Companies Stock or value will be conveyed to you annually." *Id.*

18.     Mr. Fabrega and Mr. Wagner also agreed that they would become partners going forward for any new businesses they started together.

19.     On December 17, 2019, Mr. Wagner formalized the promise he made in 2017 to reward Mr. Fabrega with equity ownership. To that end, WDC agreed to sell Mr. Fabrega 4,667 shares of WDC's Treasury Stock for a price of $1,428,247.00.  *See* Ex. 5, December 17, 2019 Stock Purchase Agreement.  As a result of this transaction, Mr. Fabrega owned 40% of WDC, and Mr. Wagner owned the 60%.

20.     As reflected on the December 17, 2019 Amended and Restated Bylaws of Wagner Development Company, Inc., Mr. Fabrega became a Director of WDC, with Mr. Wagner serving as the other Director. *See* Ex. 6, December 17, 2019 Amended and Restated Bylaws of Wagner Development Company, Inc. He also obtained three officer roles:  Vice President, Assistant Secretary, and Treasurer.  *Id.*

21.     Further, on the same day, WDC entered into a Non-Competition/Bonus Agreement with Mr. Fabrega, agreeing to pay him $2,525,635.72 in four equal annual installments of $631,408.93 ("Non-Compete Payment") in consideration for a broad restrictive covenant

against competition or solicitation. *See* Ex. 7, December 17, 2019 Non-Competition/Bonus Agreement.

22.     The four installments were due on December 20, 2019, December 20, 2020, December 20, 2021, and initially December 20, 2022. *Id.*

23.     WDC paid the first three Non-Compete Payments, but it has not paid the final Non-Compete Payment of $631,408.93.

24.     The law firm of Jones Gregg Creehan & Gerace ("Jones Gregg") represented WDC during the equity purchase transaction between Mr. Fabrega and WDC, and Jones Gregg drafted the December 17, 2019 Stock Purchase Agreement, December 17, 2019 Amended and Restated Bylaws of Wagner Development Company, Inc., and the December 17, 2019 Non-Competition/Bonus Agreement, along with all corporate resolutions and other documents connected to the equity purchase transaction.

25.     The law firm of Foster Pepper represented Mr. Fabrega in the equity purchase transaction.

26.     Simultaneous to their work together at WDC, Mr. Fabrega and Mr. Wagner started several other businesses together. They created GT Property Holdings, LLC together in mid-2018, ultimately memorializing their agreement on December 17, 2019. *See* Ex. 8, December 17, 2019 Amended and Restated Operating Agreement of GT Property Holdings, LLC.

27.     In the December 17, 2019 Amended and Restated Operating Agreement of GT Property Holdings, LLC, Mr. Fabrega held a 40% equity interest in GT Property Holdings, LLC, and Mr. Wagner held 60%.[1] *See id.*

28.     Jones Gregg drafted the December 17, 2019 Amended and Restated Operating

---

[1] Per § 2.13 of Ex. 8, Mr. Fabrega serves as Co-Manager of GT Property Holdings with Mr. Wagner.

Agreement of GT Property Holdings, LLC, along with other related documents such as member resolutions.

29.     Mr. Fabrega and Mr. Wagner subsequently started two more businesses together. They formed Hilltop Business Park LLC in September 2021 with Mr. Fabrega owning 40% and Wagner owning 60%. *See* Ex. 9, September 10, 2021 Operating Agreement of Hilltop Business Park LLC. For this transaction, Sebring & Associates drafted the September 10, 2021 Operating Agreement of Hilltop Business Park LLC.

30.     Mr. Fabrega and Mr. Wagner also formed TG Investments, LLC in early 2022 with each owning 50% of the business. For this transaction, Jones Gregg drafted the operating agreement for TG Investments LLC.

31.     Mr. Fabrega has incurred taxable income from his ownership of the Entities.

**Mr. Fabrega Seeks to Divest Himself of His Ownership in WDC and the Other Businesses**

32.     In late 2021, Mr. Wagner and Mr. Fabrega agreed that Mr. Fabrega should take a more strategic leadership role in WDC. Accordingly, Mr. Fabrega continued in his role as Vice President and WDC hired a new COO to focus on the day-to-day operations.

33.     Several months later in mid-2022, while WDC and the other businesses continued to thrive under Mr. Fabrega's management and leadership, he and his family decided to return Washington.

34.     Although he tried for a few months to continue to serve as the Vice President of WDC, Mr. Fabrega realized that he could no longer handle the travel and competing commitments on his time.

35.     Thus, on September 30, 2022, Mr. Fabrega informed Mr. Wagner that he was resigning from his positions at WDC. *See* Ex. 10, November 8, 2022 Letter from Glen Wagner

to Thomas Fabrega.

36.    Shortly thereafter, Mr. Fabrega indicated that he wished to divest himself from the Entities. *See id.*

37.    Mr. Wagner agreed with Mr. Fabrega, concluding, "it would be best for us to go our separate ways." *See id.*

38.    In an email to WDC employees, Mr. Wagner informed everyone of Mr. Fabrega's departure and stated that "[Mr. Fabrega's] contribution to the company was vital in our growth and he will be missed." *See* Ex. 11, October 7, 2022 Email from Glen Wagner to WDC Employees.

39.    Around this time of Mr. Fabrega's announcement of his desire to divest from the Entities, Mr. Fabrega and Mr. Wagner began to discuss Mr. Wagner purchasing Mr. Fabrega's equity interests in the Entities. For example, on October 6, 2022, Mr. Wagner emailed Mr. Fabrega and said, "I would like to talk about how to purchase the stock back when you are ready." *See* Ex. 12, October 6, 2022 Email from Glen Wagner to Mr. Fabrega.

40.    Over the next few months, the parties unsuccessfully attempted to agree on the terms of Mr. Fabrega's divestment of the Entities.

41.    In particular, the parties disagreed on the value of Mr. Fabrega's equity interests in the Entities.  During a December 6, 2022 negotiation session, Mr. Wagner agreed to provide Mr. Fabrega complete access to the books and records of the Entities to help Mr. Fabrega calculate the value of his equity interests.

42.    Further, through counsel, the parties continued to discuss settlement. They also discussed jointly retaining a valuation expert to objectively inform both parties of the value of Mr. Fabrega's equity interests.

43.     By mid-January 2023, the Defendants' counsel stopped responding to the efforts of Mr. Fabrega's counsel to jointly obtain a valuation expert and settlement discussions stopped.

44.     Moreover, Mr. Fabrega learned that the Defendants had filed a Writ of Summons on February 1, 2023 in the Allegheny County Court of Common Pleas, which can be found at Case Number GD-23-001551.

45.     The Defendants have served Mr. Fabrega with the Writ of Summons but have otherwise failed to file a complaint.[2]

46.     Left with no alternative, Mr. Fabrega engaged local counsel to seek to protect his interests and his multi-million dollar investments.  *See* Docket No. GD-23-001551.

**Mr. Fabrega Sought to Examine the Books and Records of the Entities**

47.     On February 16, 2023, Mr. Fabrega sent a letter requesting a books-and-records examination of the Entities. *See* Ex. 13, February 16, 2023 Correspondence of Counsel. The request stemmed from the parties' December 6, 2022 agreement that Mr. Fabrega could examine the Entities' books and records in hopes of obtaining an objective valuation of the Entities, a recourse he could also pursue as a shareholder under 15 Pa.C.S. § 1508(c).[3]

48.     In that letter, Mr. Fabrega noted that he accepted the offer from Mr. Wagner to have "complete and unfettered access to the books and records" of the Entities. *See id.*

49.     Mr. Wagner failed to honor this request.  *Id.*

50.     On March 23, 2023, Mr. Fabrega sent another letter ("Shareholder Demand Letter") along with a verified power of attorney in accordance with the requirements of 15 Pa.C.S. §

---

[2] GT Property Holdings, LLC, Hilltop Business Park LLC, and TG Investments LLC are also named as plaintiffs in Case Number GD-23-001551.

[3] The Amended and Restated Bylaws of Wagner Development Company, Inc. also contained a right for each shareholder to examine the books and records of WDC. *See* Ex. 6, December 17, 2019 Amended and Restated Bylaws of Wagner Development Company, Inc. at 12. The same existed for GT Property Holdings, LLC. *See* Ex.8, December 17, 2019 Amended and Restated Operating Agreement of GT Property Holdings, LLC at 12.

1508(b), notifying WDC, GT Property Holdings, LLC, and Hilltop Business Park LLC of his intent to have counsel and forensic accountants conduct the examination on March 29, 2023, beginning at 9:00 a.m. [4] *See* Ex. 14, Shareholder Demand Letter.

51.    However, Mr. Wagner responded, through counsel, after hours on March 28, 2023 saying that he would "not be making anything available for inspection per [Mr. Fabrega's] request under the statute." *See* Ex. 15, March 28, 2023 Email from Defendants' Counsel.

52.    On the morning of March 29, 2023, Mr. Fabrega incurred significant expense to have counsel and his outside forensic accountants prepared and appear at the office of WDC, GT Property Holdings, LLC, and Hilltop Business Park LLC to conduct the inspection and examination.

53.    Mr. Fabrega's counsel and accountants were denied access. *See* Exs. 16-18, Affidavits of Nadia Brooks, Justin Remlinger, and Mark Medwig.

54.    Mr. Wagner took the position that Mr. Fabrega "is not a shareholder," of WDC and therefore "is not entitled to the benefits of the [shareholder demand] statute in the first place." *See id.*

55.    Mr. Wagner gave no reason why he denied access to the books and records of GT Property Holdings, LLC and Hilltop Business Park LLC.

56.    Mr. Wagner's claim that Mr. Fabrega is not a shareholder of WDC is false given that Mr. Fabrega owns 40% of the shares in WDC as reflected in the December 17, 2019 Stock Purchase Agreement.

---

[4] During a call with counsel on March 13, Mr. Wagner's counsel raised an issue about whether Mr. Fabrega's February 16 letter technically complied with 15 Pa.C.S. § 1508.  To appease those concerns, Mr. Fabrega sent the second letter directly to the principal place of business of WDC, GT Property Holdings, LLC, and Hilltop Business Park LLC and included a verified power of attorney authorizing his counsel and forensic accountants to conduct the inspection and examination.

57.     In a filing in state court at Case Number GD-23-001551, Mr. Wagner has taken the position that Mr. Fabrega is not a shareholder of WDC because Mr. Fabrega, when entering into the December 17, 2019 Stock Purchase Agreement, did not follow Pennsylvania Rule of Professional Conduct 1.8. Ex. 19, Motion to Assign Case to Commerce and Complex Litigation Center at ¶¶ 17-27.

58.     Rule 1.8 prohibits a lawyer from "enter[ing] into a business transaction with a client or knowingly acquir[ing] an ownership, possessory, security or other pecuniary interest adverse to a client unless" certain conditions exist including that (1) "the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client," (2) "the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on the transaction," and (3) "the client gives informed consent in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction." Rule 1.8.

59.     As Mr. Wagner puts it, Mr. Fabrega "never directed, advised, or suggested Mr. Wagner and/or WDC seek independent legal counsel regarding" the Stock Purchase Agreement and "never provided the required informed consent that the laws of our Commonwealth mandate." Ex. 19 at ¶ 26. Thus, the Stock Purchase Agreement is "void ab initio" and Mr. Fabrega never became a shareholder in WDC.[5] *See id.* at ¶ 27.

---

[5] Additionally, Mr. Wagner claims the February 11, 2016 Indemnity Agreement is also void because Mr. Fabrega supposedly violated Pennsylvania Rule of Professional Conduct 1.8. Ex. 19 at ¶ 22. While Mr. Wagner is incorrect on the merits (the February 11, 2016 Indemnity Agreement is valid and enforceable), the February 11, 2016 Indemnity Agreement is not relevant to the dispute about whether Mr. Fabrega can examine the records of his businesses because the February 11, 2016 Indemnity Agreement was not the contract that provided Mr. Fabrega equity in any of the businesses.

60.     Several reasons exist for why Mr. Wagner is wrong, but the simplest is that Mr. Fabrega never provided legal services to WDC, Mr. Wagner, or any of the other businesses in which Mr. Fabrega shared equity with Mr. Wagner.

61.     Whether the Pennsylvania Rules of Professional Conduct applied to Mr. Fabrega "depends on whether" Mr. Fabrega provided "professional legal services" to WDC, Mr. Wagner, or their other businesses. *See Bauer v. Pa. State Bd. of Auctioneer Examiners*, 154 A.3d 899, 904-05 (Pa. Commw. Ct. 2017).

62.     "The types of services that have been held to constitute professional legal services are generally those involving legal advice to clients, preparation of documents for clients involving legal principles beyond the knowledge of ordinary laypersons, and the appearance on behalf of clients before tribunals whose actions could affect the clients' rights." *Id.* at 905.

63.     Mr. Fabrega never provided legal services to WDC, Mr. Wagner, or anyone else. When WDC hired him in February 2016, Mr. Fabrega became a Project Coordinator for WDC, a construction business, where he performed tasks such as "(1) preparation and distribution of subcontracts and purchase orders . . . ; (2) creation and maintenance of individual project files; (3) [and] processing and logging payment applications and invoices" among other tasks. *See* Ex. 1, February 10, 2016 Offer of Employment Letter. His offer of employment expressly disclaimed that Mr. Fabrega would provide legal services. It stated, "Wagner represents and warrants that the fulfillment of Thomas Fabrega's employment responsibilities does not constitute the provision of legal advice in any capacity." *Id.*; *see also Bauer*, 154 A.3d at 905 (noting that lawyer's employment contract included a provision stating he did not "provide the Client legal advise [*sic*], or legal service, in or on any other matter" when holding that the lawyer did not provide legal services).

64.    When WDC promoted Mr. Fabrega to COO in June 2016, Mr. Fabrega again took on a non-legal role which included tasks such as "1) Direct company operations, 2) Develop & implement budgets, [and] 3) Establish performance goals and barometers" among others. *See* Ex. 3, June 8, 2016 Offer of Advancement Letter. Again, Mr. Fabrega's promotion letter clarified that "Thomas Fabrega's employment responsibilities does not constitute the provision of legal advice in any capacity." *See id.*

65.    At bottom, Mr. Fabrega worked in construction and real estate, not as a lawyer. *See Bauer*, 154 A.3d at 905 ("Bauer's contracts demonstrate that he was conducting auctions for clients for whom he was providing no other services and the auctioning of toy trains is not an activity that would reasonably be understood as involving legal services."). When he purchased 40% of WDC on December 17, 2019 pursuant to the Stock Purchase Agreement, the Pennsylvania Rules of Professional Conduct did not apply.  Accordingly, even assuming the Mr. Wagner's theory is correct, the Stock Purchase Agreement (along with all the other agreements between Mr. Fabrega, Mr. Wagner, and WDC) is valid, and Mr. Fabrega is a shareholder of WDC.

66.    Putting aside the fact that Pennsylvania Rules of Professional Conduct did not apply to Mr. Fabrega when he purchased equity in WDC, WDC had independent counsel, Jones Gregg, representing it in the December 17, 2019 transaction. Mr. Fabrega had his own counsel, Foster Pepper. WDC's reliance on independent counsel means that the Mr. Fabrega's agreements with WDC are not "void," under Pennsylvania Rules of Professional Conduct 1.8.

67.    In recent correspondence, Mr. Wagner's counsel has insinuated that Mr. Fabrega abused his position by using his mother, who was the controller at WDC, to prepare non-interest bearing loans from WDC for Mr. Fabrega's benefit.

68.     Nothing about Mr. Fabrega's loans was abusive. Mr. Fabrega discussed the loans, including the fact that they were non-interest bearing, with Mr. Wagner, and Mr. Wagner approved the loans to Mr. Fabrega. Mr. Fabrega's mother's role was to document the loans, nothing else.

69.     In short, Mr. Fabrega owns 40% of WDC, GT Property Holdings, LLC, and Hilltop Business Park LLC. Mr. Wagner has contrived an after-the-fact theory to try and take all of Mr. Fabrega's equity without paying anything for it.

## LEGAL CLAIMS

## COUNT I: MR. WAGNER HAS BREACHED HIS FIDUCIARY DUTIES OWED TO MR. FABREGA

70.     Mr. Fabrega incorporates and reasserts all allegations set forth in the foregoing paragraphs.

71.     At all relevant times, Mr. Wagner was an officer, director (or manager), and majority owner of WDC, GT Property Holdings, LLC and Hilltop Business Park LLC.

72.     At all relevant times, Mr. Fabrega was a minority shareholder of WDC, GT Property Holdings, LLC and Hilltop Business Park LLC.

73.     Pennsylvania law imposes a fiduciary duty on corporate directors: "A director of a business corporation shall stand in a fiduciary relation to the corporation and shall perform his duties as a director, including his duties as a member of any committee of the board upon which he may serve, in good faith, in a manner he reasonably believes to be in the best interests of the corporation and with such care, including reasonable inquiry, skill and diligence, as a person of ordinary prudence would use under similar circumstances." 15 Pa.C.S. § 1712(a).

74.    Pennsylvania law imposes a fiduciary duty on corporate officers: "Except as otherwise provided in the bylaws, an officer shall perform his duties as an officer in good faith, in a manner he reasonably believes to be in the best interests of the corporation and with such care, including reasonable inquiry, skill and diligence, as a person of ordinary prudence would use under similar circumstances." 15 Pa.C.S. § 1712(c).

75.    As a director and officer, Mr. Wagner is required to act in furtherance of the best interests of the shareholders of WDC, GT Property Holdings, LLC, and Hilltop Business Park LLC so as to benefit all shareholders, including minority shareholders.

76.    Further, Mr. Wagner, as a majority shareholder in WDC, GT Property Holdings, LLC, and Hilltop Business Park LLC, owes a fiduciary duty to Mr. Fabrega as a minority shareholder to not exclude minority shareholders from their proper share of benefits from the enterprise.

77.    An attempt by a majority shareholder to "freeze-out" minority shareholders for the purpose of continuing the enterprise for the benefit of the majority shareholder constitutes a breach of the majority shareholder's fiduciary duty to the minority shareholder.

78.    A freeze-out occurs, in the context of a closely held corporation, when a majority shareholder denies the minority shareholder the benefits of ownership, including accessing the business' books and records. *Linde v. Linde*, 220 A.3d 1119, 1143 (Pa. Super. Ct. 2019).

79.    By refusing to permit Mr. Fabrega to inspect the books and records of WDC, GT Property Holdings, LLC, and Hilltop Business Park LLC and falsely claiming that Mr. Fabrega is not an owner of WDC, Mr. Wagner, as a director, officer, and majority owner, has violated his fiduciary duty by denying Mr. Fabrega of his benefits of ownership.

80.     Mr. Fabrega has requested to inspect the records to discover the true value of WDC and the other businesses to determine a fair purchase price of the shares as he seeks to divest himself of them. Without an accurate value, Mr. Fabrega cannot sell his equity interests for a fair price.

81.     Additionally, Mr. Wagner's false claim that Mr. Fabrega is not an owner of WDC will severely discount the value of Mr. Fabrega's equity interests in any future sale because a potential buyer will not have certainty of ownership until Mr. Wagner's false claim is withdrawn.

82.     Therefore, as a result of Mr. Wagner's breach of his fiduciary duty to Mr. Fabrega, Mr. Fabrega's equity interests, a multi-million dollar investment, has become practically worthless.

83.     Absent judicial intervention, the result of Mr. Wagner's actions will continue to cause direct and proximate harm to Mr. Fabrega in a significant monetary amount.

## COUNT II: MR. WAGNER IS UNJUSTLY ENRICHED AS A RESULT OF HIS ATTEMPT TO CLAIM THAT MR. FABREGA IS NOT AN OWNER OF WDC

84.     Mr. Fabrega incorporates and reasserts all allegations set forth in the foregoing paragraphs.

85.     By virtue of his wrongful conduct, as set forth in detail above, Mr. Wagner has retained a benefit and enrichment by supposedly obtaining full ownership of Mr. Fabrega's shares in WDC, a multi-million dollar investment by Mr. Fabrega.

86.     Mr. Fabrega has suffered harm that was directly and proximately caused by the bad faith dealings and breach of fiduciary duties by Mr. Wagner.

87.    Wagner has no justification or any right to maintain possession of Mr. Fabrega's equity.

88.    Absent judicial intervention, the result of this unjust enrichment will continue to cause direct and proximate harm to Mr. Fabrega.

**COUNT III: WDC OWES MR. FABREGA ATTORNEY FEES AND OTHER COSTS**

89.    Mr. Fabrega incorporates and reasserts all allegations set forth in the foregoing paragraphs.

90.    In the February 11, 2016 Indemnification Agreement between Mr. Fabrega and WDC, WDC agreed to "indemnify, defend, and hold harmless Thomas Fabrega from any and all claims, demands, losses, causes of action, settlements, liabilities, damages, lawsuits, judgments, costs, fees, penalties, expenses, including but not limited to attorneys' fees and costs, incurred by or imposed on Thomas Fabrega resulting directly or indirectly from, or arising in connection with, any act or omission relating to Wagner's business (collectively, 'Indemnified Expenses')."

91.    As a result of Mr. Wagner's breach of fiduciary duties to Mr. Fabrega, Mr. Fabrega has obtained counsel and expended a significant amount in attorneys' fees to stop Mr. Wagner from freezing him out of ownership of WDC, including Mr. Wagner's service of a Writ of Summons at Case Number GD-23-001551 in the Court of Common Pleas of Allegheny County.

92.    As such, Mr. Fabrega has incurred attorney's fees "relating to" WDC.

93.    Therefore, under the Indemnity Agreement, WDC is required to pay Mr. Fabrega's attorney's fees, along with all other costs, incurred in connection with Mr. Wagner's illegal actions against Mr. Fabrega.

315220101.1

## COUNT IV: WDC BREACHED THE NON-COMPETITION/BONUS AGREEMENT WITH MR. FABREGA

94.    Mr. Fabrega incorporates and reasserts all allegations set forth in the foregoing paragraphs.

95.    On December 17, 2019, WDC entered into a Non-Competition/Bonus Agreement with Mr. Fabrega, agreeing to pay him $2,525,635.72 in four equal annual installments of $631,408.93 ("Non-Compete Payment") in consideration for a broad restrictive covenant against competition or solicitation.  *See* Ex. 7, December 17, 2019 Non-Competition/Bonus Agreement.

96.    The four installments were due on December 20, 2019, December 20, 2020, December 20, 2021, and initially December 20, 2022. *Id.*

97.    WDC paid the first three Non-Compete Payments, but it has not paid the final Non-Compete Payment of $631,408.93.

98.    WDC's failure to pay the final Non-Compete Payment is a breach of the Non-Competition/Bonus Agreement, and Mr. Fabrega has suffered damage by not receiving his benefit of the bargain.

## PRAYER FOR RELIEF

WHEREFORE, Thomas Fabrega respectfully requests that this Honorable Court enter judgment in the following form:

      a.    Findings and judgment against Glen Wagner and Wagner Development Company, Inc. on all of Thomas Fabrega's claims;

b.  An order that Glen Wagner buy Thomas Fabrega's equity interests in Wagner Development Company, Inc., GT Property Holdings, LLC, and Hilltop Business Park LLC at a fair and just value;

c.  An award of all allowable damages, including out of pocket damages, special or consequential damages, and incidental damages;

d.  An award of equitable relief, including disgorgement for unjust enrichment;

e.  An award of court costs;

f.  An award of attorneys' fees;

g.  An award of pre- and post-judgment interest;

h.  All other relief to which Thomas Fabrega is entitled at law or in equity.

Dated:  April 20, 2023                               K&L GATES LLP


By: */s/ Thomas C. Ryan*
       Thomas C. Ryan
       Thomas.Ryan@klgates.com
       Nathan Townsend
       Nathan.Townsend@klgates.com
       Nadia J. Brooks
       Nadia.Brooks@klgates.com


K&L Gates Center
210 Sixth Avenue
Pittsburgh, Pennsylvania  15222-2613
Telephone:    +1 412 355 6500
Facsimile:    +1 412 355 6501

***Attorneys for Plaintiff Thomas Fabrega***

315220101.1